UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re Application of<br><br>QUADRE INVESTMENTS, L.P.,<br><br>Petitioner, for an Order Under 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No.: 23-mc-00795-DMS-KSC<br><br>**REPORT & RECOMMENDATION:**<br><br>**(1) TO DENY APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782;**<br><br>**AND**<br><br>**(2) STRIKE THE BILGE YILMAZ DECLARATION AND RELATED ARGUMENTS**<br><br>**DOC. NO. 1** |

Quadre Investments, L.P. ("Quadre") filed an Application for an Order under 28 U.S.C. § 1782 to conduct discovery from Patrick Dillon for use in a foreign proceeding. Doc. No. 1. Mr. Dillon opposed the Application and Quadre filed a Reply. Doc. Nos. 20, 22. Having considered the parties' submissions, the undersigned submits this Report and Recommendation to United States District Dana M. Judge Sabraw pursuant to 28 U.S.C. § 636. For the reasons discussed below, the Court **RECOMMENDS** District Judge Sabraw

1

**DENY** Quadre's Application and **STRIKE** the Bilge Yilmaz declaration and the portions of Quadre's reply brief discussing it.

## I. INTRODUCTION & BACKGROUND

### A. The Appraisal Proceeding

Quadre is a former SINA Corporation ("SINA") shareholder and a party to an appraisal proceeding (the "Appraisal Proceeding") pending in the Grand Court of the Cayman Islands (the "Cayman Court"). Doc. No. 1-4 at ¶ 7. The purpose of the Appraisal Proceeding is to determine the fair value of SINA shares following its acquisition by a majority shareholder (the "Merger"). Doc. No. 1-1 at 7.[1]

SINA is a Cayman Islands incorporated and Chinese owned online media business. Doc. No. 1-4 at ¶¶ 9-10. Before the Merger SINA was listed with Nasdaq; Charles Guowei Chao was its CEO and Chairman of the board of directors. *Id* at ¶¶ 9, 11. Mr. Chao is also the sole owner and director of New Wave MMXV Limited "New Wave." *Id* at ¶ 12. On July 6, 2020, New Wave submitted a preliminary, non-binding proposal letter to acquire SINA. *Id* at ¶ 15. SINA then appointed a Special Committee of board members to evaluate the proposal. *Id.* The Special Committee retained Morgan Stanley Asia Limited ("MSAL") as its financial advisor for the Merger. *Id* at ¶ 16. On September 28, 2020, SINA announced the Merger terms: "SINA would, in effect, be acquired by Chao, [New Wave, and related subsidiaries] (*i.e.* the Buyer Group) . . . [and] on the effective date of the Merger SINA's ordinary shares would be canceled in exchange for the right to receive $43.30 per share." *Id* at ¶ 17. MSAL issued a fairness opinion which supported $43.40 as a fair price to SINA shareholders. Doc. No. 1-7 at 576-78. On December 23, 2020, SINA held an extraordinary general meeting of shareholders ("EGM") at which point the Merger was approved. Doc. No. 1-4 at ¶ 22.

TuSimple Holdings, Inc. ("TuSimple") was one of SINA's holdings at the time of the Merger and was valued by MSAL to be worth between $186 million and $288 million.

---

[1] Page citations to filed documents refer to the page numbers affixed by CM/ECF.

*Id.* at ¶ 18. In April 2021, four months after the Merger, TuSimple went through an initial public offering ("IPO") at which time it was valued at $8.49 billion. *Id.* at ¶ 25.

Quadre dissented to the Merger and in the pending Appraisal Proceeding argues the price for its holdings in SINA was severely undervalued, as evidenced by the value of TuSimple at the time of its IPO.

**B.  Quadre's 28 U.S.C § 1782 Application for Discovery from TuSimple**

Quadre previously filed an application for § 1782 discovery from TuSimple. *See In re Oasis Focus Fund L.P.*, No. 22-mc-112-BGS, 2022 WL 17669119 (S.D. Cal. Dec. 12, 2022).[2] Quadre sought to depose a TuSimple corporate representative regarding seven topics, including:

- Matters relating to the preparation of the TuSimple IPO, including the timing and process of the TuSimple IPO and any relevant interactions with Chao and/or SINA during the relevant period[;]

- [TuSimple's] analysis, review, and consideration of any financial projections or plans concerning TuSimple as a whole, or any business units of TuSimple[;]

- [TuSimple's] analysis, consideration and views as to the value of TuSimple or its shares at the material times[;]

- The circumstances surrounding the selection and engagement of Morgan Stanley as a lead underwriter for the TuSimple IPO[;]

- [TuSimple's] role in the investigation of TuSimple, Sun Dream, and/or transactions between the two, as performed by the Committee on Foreign Investment in the United States[; and]

- [TuSimple's] contact or relationship with Mr. Charles Chao or Ms. Bonnie Yi Zhang.

---

[2] *In re Application of Quadre Investments, L.P.*, No. 22-mc-00156-BGS (S.D. Cal.), was consolidated with *In re Oasis Focus Fund L.P.*, No. 22-mc-112-BGS (S.D. Cal.), a case brought by Oasis Focus Fund LP, another former SINA shareholder and dissenter in the Appraisal Action.

Doc. No. 20-1 at 870 (Ex. I at 12). Quadre's proposed subpoena also included twenty requests for documents on the same or similar topics. *Id.* at 867-70 (Ex. I at 9-12).

TuSimple filed a motion to quash, which Quadre opposed. *In re Oasis Focus Fund LP*, 2022 WL 17669119 at *1. On December 14, 2022, Magistrate Judge Bernard G. Skomal issued a report and recommendation to grant TuSimple's motion to quash. *Id.* at *7 ("The Court finds the 'for use' statutory requirement is not met. However, even if this statutory requirement were met, the Court would still not order the discovery based on the discretionary factors discussed below.") The Court denied Quadre's application for discovery from TuSimple in large part because the IPO occurred after the Appraisal Proceeding fact discovery period and "[Quadre had] not offered any expert requests in support of [the] subpoenaed discovery." *In re Oasis Focus Fund L.P.*, 2022 WL 17669119 at *6. Quadre did not object to the report and recommendation and on March 7, 2023, voluntarily withdrew that application. *In re Oasis Focus Fund LP*, No. 22-mc-0112-BGS, Doc. No. 30.

### C.     Quadre's 28 U.S.C. § 1782 Application for Discovery from Mr. Dillon

About two months later Quadre filed this Application, now seeking to depose Mr. Dillon, who served as TuSimple's Chief Financial Officer ("CFO") from December 23, 2020, until July 7, 2022. Doc. No. 1-1 at 17; 1-7 at 315. Before becoming TuSimple's CFO, Mr. Dillon was an investment banker for nine years with Morgan Stanley. Doc. No. 1-7 at 315. He currently is the CFO of Flock Freight, Inc., a supply chain technology company located in Encinitas, California. Doc. No. 20-1, 8-9 (Ex. A).

Quadre seeks to depose Mr. Dillon regarding

- the fairness of the Merger Price and the process used to reach it, including [MSAL's] role as advisor to the Special Committee, actions taken by Mr. Chao as controller of the Buyer Group, and any coordination between TuSimple's IPO and the Merger;

- the valuation of SINA and its investments, including TuSimple, at the time of the Merger;

- the valuation of TuSimple at the time of its IPO; and

- alternative bids to acquire [SINA].

Doc. No. 1-4 at ¶ 62.

## II. DISCUSSION

### A. Recommendation to Strike Evidence & Argument Newly Raised in Reply

Mr. Dillon opposes Quadre's Application in part because "Quadre has not identified any requests by any expert for the deposition of Mr. Dillon." Doc. No. 20 at 14. Quadre responded by filing a declaration by valuation expert Bilge Yilmaz with its Reply brief. Doc. No. 22-3. Mr. Dillon was not given the opportunity to respond.

Considering Quadre elected to file this Application without expert support, even after having its prior application denied for that very reason, the Court does not find cause to delay proceedings further and task Mr. Dillon with responding to Quadre's late submission. The Court, therefore, recommends striking the Bilge Yilmaz declaration and the portions of Quadre's reply brief discussing it. *See Atigeo LLC v. Offshore Ltd., D.*, No. C13-1694-JLR, 2014 WL 239096, at *8 (W.D. Wash. Jan. 22, 2014) ("[W]hen new evidence or issues are raised on reply, courts have discretion to either strike the reply declarations and portions of the reply brief that present new material or consider the new material after affording the nonmoving party an opportunity to respond.").

The Court notes, however, even if it were to consider the Bilge Yilmaz declaration, the Court would still recommend denying the requested discovery under the *Intel* discretionary factors, as explained below.

### B. 28 U.S.C. § 1782 and Relevant Legal Standards

28 U.S.C. § 1782 "has been distilled to permit district courts to authorize discovery where three general requirements are satisfied: (1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is '*for use* in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'"

*Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (quoting 28 U.S.C. § 1782(a)) (emphasis added).

"[E]ven where an applicant satisfies § 1782's statutory prerequisites, the district court still retains substantial discretion to permit or deny the requested discovery." *Id.* at 926 (citing *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 264-65 (2004)). Courts must consider: (1) whether "the[] evidence . . . may be unobtainable absent § 1782(a) aid"; (2) "the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the petitioners are "attempt[ing] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery is "unduly intrusive or burdensome." *See Intel*, 542 U.S. at 264-65.

A § 1782 application is also subject to Fed. R. Civ. P. 26 and 45, and "must show that the discovery is relevant to the claims and defenses in the foreign tribunal," *In re Oasis Focus Fund LP*, 2022 WL 17669119 at *13.

**C.  28 U.S.C. § 1782's "For Use" Requirement**

There is no dispute the first and third requirements of 28 U.S.C. § 1782 are met. Only the "for use" requirement is at issue here.

To satisfy the "for use" requirement "applicants must show that the material requested is tethered to a specific foreign proceeding and is relevant." *In re Qualcomm, Inc.*, Case No. 18-mc-80134-NC, 2018 WL 6660068 at *2 (N.D. Cal. Dec. 19, 2018). "The applicant must be in a position to have the [tribunal] consider that evidence or have some means of injecting the evidence into the proceeding to use the evidence." *In re Pioneer Corp.*, No. MC 18-0037 UA (SS), 2018 WL 2146412, at *6 (C.D. Cal. May 9, 2018) (quotations omitted).

Quadre contends Mr. Dillon's "deposition transcript will be used by and will assist the experts retained by the Dissenting Shareholders (including [Quadre]) and [SINA], as well as the [Cayman Court], to determine the fair value of [SINA's] shares." Doc. No. 1-4 at ¶ 63. Quadre argues "[Mr. Dillon] is uniquely suited to provide this testimony, since he

6

was employed by Morgan Stanley at the time the Merger was announced, and then by TuSimple at the time of its IPO." Doc. No. 1-4 at ¶ 62. Quadre does not, however, show that Mr. Dillon is likely to have any information relevant to the Appraisal Proceeding.

As Magistrate Judge Skomal explained, the Cayman Court set December 23, 2020 as the relevant SINA share valuation date and limited fact discovery for the Appraisal Proceeding to the five years prior. *In re Oasis Focus Fund L.P.*, 2022 WL 17669119 at *3. Post-valuation fact discovery date is not permitted except upon expert request. *Id.*

Quadre does not show Mr. Dillon had any involvement in or knowledge of events occurring during the fact discovery period (*i.e.*, alternative bids to buy SINA, the fairness of the Merger price and the process used to reach it, actions taken by Mr. Chao, any coordination between TuSimple's IPO and the Merger, or SINA's valuation at the time of the Merger). Quadre alleges that while Mr. Dillon was employed with Morgan Stanley, "[MSAL] was engaged as the financial advisor to the [SINA board of directors] Special Committee . . . [and] Morgan Stanley was engaged as TuSimple's lead underwriter for its IPO." Doc. No. 1-1 at 17 (citations omitted). Then "[o]n December 23, 2023, the same day [the Merger is approved], . . . TuSimple filed a confidential draft registration statement with the SEC, TuSimple announced that [Mr. Dillon] would [join it] as its [CFO]." *Id.* These facts do not show that Mr. Dillon had any involvement in the SINA Merger process, or that he had any association with TuSimple prior to December 23, 2020. Quadre, therefore, fails to show it is likely to obtain any testimony from Mr. Dillon regarding events that took place during the Appraisal Proceeding's fact discovery period.

The only information Quadre demonstrates Mr. Dillon may be knowledgeable about is TuSimple's IPO, which occurred in April 2021, while Mr. Dillon was its CFO. *See* Doc. No. 1-4 at ¶ 25. The IPO, however, occurred after the fact discovery period and, thus, is not relevant to the Appraisal Proceeding unless requested by an expert.

Based on the foregoing, the Court finds Quadre has not satisfied the "for use" requirement because it has not shown the discovery it seeks from Mr. Dillon is relevant to the Appraisal Proceeding. *In re Pioneer Corp.*, 2018 WL 2146412, at *6 ("[E]ven if

discovery is useful to an applicant, the discovery will not be deemed for use in a foreign proceeding unless the applicant can introduce the information as evidence in that proceeding."); *see also Advanced Micro Devices, Inc. v. Intel Corp.*, No. C01-7033, 2004 WL 2282320, at *2 (N.D. Cal. Oct. 4, 2004) (analyzing discretionary factors and denying request for discovery in part because the European Commission stated in amicus briefs that it did not need and would not consider any of the documents sought.)

Even if this requirement were met, however, the Court would still not order discovery based on the discretionary factors discussed below.

### D. Discretionary Factors

Even when the statutory requirements of § 1782 are met, courts have "broad discretion to determine whether, and to what extent, to honor a request for assistance under 28 U.S.C. § 1782." *Four Pillars Enters. Co v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002). Courts must consider the *Intel* factors: (1) whether "the[] evidence . . . may be unobtainable absent § 1782(a) aid"; (2) "the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the petitioners are "attempt[ing] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery is "unduly intrusive or burdensome." *See Intel*, 542 U.S. at 264-65. "[T]he district court should deny the request if the district court suspects that the request is a fishing expedition or a vehicle for harassment[.]" *In re Pioneer Corp.*, 2018 WL 2146412, at *3 (quotations omitted.)

#### 1. Whether the Evidence is Obtainable Without § 1782(a) Aid

Quadre argues it should be permitted discovery because "[Mr. Dillon] is not a party to the Appraisal Proceeding and, therefore, will not be subject to party discovery in the Appraisal Proceeding." Doc. No. 1-1 at 21-22.

Quadre, however, makes no showing that the information it seeks from Mr. Dillon cannot be otherwise obtained through the Appraisal Proceeding. In fact, much of this information should be available directly from SINA (*e.g.*, information about the fairness of the Merger Price and the process used to reach it; MSAL's role; Mr. Chao's actions, any

8

coordination between TuSimple's IPO and the Merger; SINA's valuation; and alternative bids to buy SINA). Quadre's valuation expert represented he can request this discovery directly from SINA, but has not. *See e.g.,* Doc. No. 22-3, *Decl. of Bilge Yilmaz* ("[T]he experts in the Appraisal Proceeding are permitted to make "information requests" for information from SINA that the experts consider relevant for the purpose of preparing their opinion on Fair Value. To the extent I require information regarding the value of TuSimple, it would be my intention to submit information requests to [SINA].") This factor, therefore, weighs against the requested discovery. *See Medical Inc. Ass'n Smile Create*, 547 F. Supp. 3d 894, 898 (N.D. Cal. July 8, 2021) (While "[t]he first [Intel] factor considers whether the person from whom discovery is sought is a party to the foreign proceeding, … 'the key issue is whether the material is obtainable through the foreign proceeding.'"); *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 91 (3d Cir. 2010) (Courts must consider "[w]hether the discovery sought is within the foreign tribunal's jurisdictional reach, and therefore accessible without seeking the aid of § 1782.")

## 2.  Receptivity of Foreign Tribunal to U.S. Judicial Assistance

Quadre argues "the Cayman Court will consider any evidence that has a bearing on determining the fair value of [SINA's] shares, . . . [it] has never excluded any evidence in an appraisal proceeding solely because it was obtained using Section 1782, . . . [it] has been informed that [Quadre] . . . brought [an] application[] under Section 1782, . . . [and] did not place any restrictions on [Quadre] . . . from doing so." Doc. No. 1-1 at 23, 25.

As explained above, the Cayman Court limited fact discovery to the five-year period preceding the December 23, 2020 valuation date, unless requested by an expert. "[T]he Court cannot ignore the parameters and limitations the Cayman Court set in considering whether it would be receptive to [the requested] discovery." *In re Oasis Focus Fund LP*, 2022 WL 17669119, at *11. "Nor can the Court interpret the Cayman Court's allowance for expert requests post-December 23, 2020 as an indicator the Cayman Court is receptive to [the requested discovery], particularly in the absence of any expert request." *Id.*

Quadre does not explain whether the Cayman Court would be receptive to the specific discovery it seeks from Mr. Dillon, *i.e.,* a deposition on subjects about which he lacks information, or about the TuSimple IPO, which occurred after the relevant fact discovery period. "[W]hile the Cayman Court may have had notice that [Quadre was] generally seeking § 1782 discovery," . . . that "does not mean the Cayman Court would be receptive to discovery that exceeds the limits the [it] set." *Id*. at 11.

Considering the only information Quadre demonstrated Mr. Dillon may be knowledgeable about is the TuSimple IPO, and the IPO occurred after the relevant fact discovery period, Quadre has not shown the Cayman Court is willing to consider the discovery Quadre seeks. This factor, therefore, cuts against allowing the requested discovery. *See In re Schlich*, 893 F.3d at 52 (courts may consider "relevancy under the second Intel factor); *Medical Inc. Ass'n Smile Create*, 547 F. Supp. 3d at 898 ("If there is reliable evidence that the foreign tribunal would not make any use of the requested material, it may be irresponsible for the district court to order discovery, especially where it involves substantial costs to the parties involved.").

### 3. Attempt to Circumvent the Cayman Court's Discovery Limitations

Quadre argues "the Cayman Court is receptive to evidence obtained under Section 1782, . . . expects parties to obtain evidence that is necessary to prosecute their case, and there is no requirement to obtain permission from the Cayman Court before seeking *relevant* discovery abroad." Doc. Nos. 1-1 at 26, 1-4 at ¶¶ 47–49, 55–61 (emphasis added). However, as discussed above, Quadre makes no showing that Mr. Dillon has information relevant to the Appraisal Proceeding. Moreover, Quadre's expert can use the Appraisal Proceeding to request this information from SINA but has not. Thus, this factor also cuts against the requested discovery. *Medical Inc. Ass'n Smile Create*, 547 F. Supp. 3d at 899 ("A perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in the court's analysis.") (citation omitted); *see also In re Gilead Pharmasset LLC*, 2015 WL 1903957, *4 (D. Del. Apr. 14, 2015) (collecting cases finding the same).

#### 4. Unduly Intrusive and Burdensome

Quadre argues Mr. Dillon's deposition would not be unduly intrusive or burdensome because he "has personal knowledge of the key issues in the Appraisal Proceeding [and this] evidence is proportional to the needs of the Appraisal Proceeding, a multi-billion dollar dispute." Doc. No. 1-1 at 28.

Again, Quadre makes no attempt to explain how Mr. Dillon has personal involvement or knowledge of events relevant to the Appraisal Proceeding. The Court, therefore, finds the burden on Mr. Dillon to be significant and not proportional to the needs of the Appraisal Proceeding. *See In re Fischer Advanced Composite Components AG*, No. C08-1512RSM, 2008 WL 5210839, at *5 (W.D. Wash. Dec. 11, 2008) (denying § 1782 application where petitioner "fail[ed] to detail with any specificity why the depositions . . . are necessary," but rather "merely suggests that because these two individuals are at management level positions at [a third-party company], their depositions are needed.")

### III.   CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS the Hon. Dana M. Sabraw DENY Quadre's Application and STRIKE the Bilge Yilmaz declaration and the portions of Quadre's reply brief discussing it.

IT IS HEREBY ORDERED that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **November 13, 2023**. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that a reply to the objections shall be filed with the Court and served on all parties no later than **November 20, 2023**. The failure to file

//
//
//
//
//

11

1 | objections within the specified time may waive the right to raise those objections on appeal
2 | of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998)

3 | **IT IS SO ORDERED.**

4 | Dated:  October 27, 2023

Hon. Karen S. Crawford
United States Magistrate Judge